# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                        No. CR 09-1763 JB

JOHNSON JOHN,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Letter from John F. Moon Samore to the Court (dated January 25, 2012), filed January 25, 2012 (Doc. 98)("Samore Letter"). The Court held a hearing on February 6, 2012. The primary issue is whether the Court should order that the United States Marshals Service provide Defendant Johnson John with a second hearing aid, for his left ear. The Court will grant the request contained in the Samore Letter. The Court will order that the U.S. Marshals Service provide John with a second hearing aid, this time for his left ear, and that it evaluate the hearing aid for his right ear to determine why the batteries are malfunctioning.

## PROCEDURAL BACKGROUND

On June 25, 2009, a federal grand jury indicted John on nine counts. See Indictment, filed June 25, 2009 (Doc. 13). Counts 1 and 2 charge John with violations of 18 U.S.C. §§ 2244(a)(3), 2246(3), and 1153, for knowingly engaging in sexual contact with Jane Doe 1, who had attained the age of twelve but not the age of sixteen. See Indictment at 2. Counts 3 and 4 charge John with violations of 18 U.S.C. §§ 2241(a)(1), 2246(2)(A), and 1153, for knowingly causing and attempting to cause Jane Doe 1 to engage in a sexual act through force. See Indictment at 2-3. Count 5 charges

John with violations of 18 U.S.C. §§ 2241(a)(1), 2245(3), and 1153, for knowingly engaging in sexual contact with Jane Doe 2, who had not yet attained the age of twelve.  See Indictment at 3. Count 6 charges John with violations of 18 U.S.C. §§ 2241(c), 2246(2)(c), and 1153, for knowingly engaging in a sexual act with Jane Doe 3, who had not yet attained the age of twelve.  See Indictment at 3-4.  Counts 7 and 9 charge John with violations of 18 U.S.C. §§ 2241(a)(3), 2246(3), and 1153, for knowingly engaging in sexual contact with Jane Doe 3, who had not yet attained the age of twelve.  See Indictment at 4-5.  Count 8 charges John with violations of 18 U.S.C. §§ 2241(a)(1), 2246(2)(B), and 1153, for knowingly causing and attempting to cause Jane Doe 3 to engage in a sexual act through force.  See Indictment at 4.

On November 15, 2010, the Court entered its Order for Audiological Services.  See Doc. 63 ("Order").  In its Order, the Court noted that the Forensic Evaluation, filed January 4, 2010 (Doc. 31), and the Forensic Psychological Evaluation for Competency, filed September 2, 2010 (Doc. 56-1), identified a need for audiological services.  See Order at 1.  The Court also noted that John's counsel, John F. Samore, expressed concerns regarding his ability to communicate with his client because of John's hearing difficulties.  See Order at 2.  The Court concluded that the United States Marshals Service must provide John with a hearing aid to ensure that justice will be done in this case.  See Order at 2.  The Court noted that: (i) John is ineligible to receive such services from the Department of Veteran's Affairs, because of his incarceration; (ii) Indian Health Services does not fund hearing aids or devices; and (iii) the community non-profit Healthcare for the Homeless does not provide such services.  See Order at 2.

On January 25, 2012, Mr. Samore filed his Letter with the Court.  In it Mr. Samore represents that the audiologist treating John, Dr. Ferri Irime, Au.D., recommends that John be provided with a second hearing aid.  See Samore Letter at 1.  Mr. Samore indicates that John still

has trouble hearing him when they speak.  See Samore Letter at 1.  Mr. Samore also informs the Court that John was only approved for one hearing aid, because the Court's Order used the term "hearing aid," singular.  Samore Letter at 1.  Mr. Samore attached a letter from Dr. Irime to his letter.  See Letter from Dr. Ferri Irime to John F. Moon Samore (dated January 20, 2012), filed January 25, 2012 (Doc. 98)("Dr. Irime Letter").  In her letter, Dr. Irime notes that John needs "amplification in both ears due to the severity of his hearing loss."  Dr. Irime Letter at 3.  She indicates that John has "moderate severe to profound mixed hearing loss" in his left ear and "slight to moderate severe sensorineural hearing loss" in his right ear.  Dr. Irime Letter at 7.  There is also a notation on the facsimile transmission cover sheet attached to the Dr. Irime Letter which states that the batteries in John's current hearing aid are dying within twenty to thirty minutes when they are supposed to last a week.  See Dr. Irime Letter at 2.

The Court held a hearing on February 6, 2012.  John was present in the courtroom and used a hearing enhancement headset that the Court supplies for people who are hard of hearing.  John stated that he received a hearing aid for his right ear about a year ago after the entry of the Court's Order.  See Transcript of Hearing at 3:9-20 (February 6, 2012)(Samore)("Tr.").[1]  John represented that he met with an Ear, Nose, and Throat surgeon to see if the problems associated with his left ear could be addressed surgically, but learned that they cannot be.  See Tr. at 3:20-4:2 (Samore).  He asserted that the United States Marshals Service believes that it has complied with the Order, because it provided one hearing aid and the Order did not address whether he needs two hearing aids.  See Tr. at 4:2-7 (Samore).  Mr. Samore represented that his client's hearing was better and that John could hear him with difficulty.  See Tr. at 4:13-17 (Samore).  Plaintiff United States of

_____

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

America stated that it did not see a way around providing John with a second hearing aid, because otherwise proceeding to trial would be very difficult. <u>See</u> Tr. at 5:10-21 (Tapia-Brito). The Court indicated that it would enter an order granting the request for a second hearing and that the United States Marshals Service will have to pay for the hearing aid. <u>See</u> Tr. at 6:10-13 (Court). The Court recalled that, when addressing this issue the first time, Dr. Elliot Rapoport, Ph.D., of Santa Fe, New Mexico, indicated that John's trouble communicating could be a competency issue, because he would not be able to assist in his defense or understand the proceedings. <u>See</u> Tr. at 6:16-25 (Court).

The Court then inquired about the notation that John's current hearing aid is not operating properly, because the batteries are dying within twenty to thirty minutes. <u>See</u> Tr. at 7:4-8 (Court). Mr. Samore indicated that John was still experiencing problems with the hearing aid for his right ear and  that the batteries may be defective. <u>See</u> Tr. at 7:9-19 (Samore). Mr. Samore informed the Court that ordinarily hearing aid batteries last for a day or two, but that John's were lasting only a matter of minutes. <u>See</u> Tr. at 8:9-14 (Samore). The Court indicated that it would also order that John's current hearing aid be reevaluated to determine why his batteries were not functioning. <u>See</u> Tr. at 8:24-9:4 (Court, Samore). The United States indicated that it did not object to the Court resolving that issue as well. <u>See</u> Tr. at 9:5 (Tapia-Brito).

## <u>ANALYSIS</u>

The Court will order that the United States Marshals Service provide John with a hearing aid for his left ear and evaluate whether his hearing aid for his right ear is operating correctly. John was first evaluated by Bureau of Prisons Forensic Psychologist David Morrow, Ph.D. in October 2009. Dr. Morrow warned that John's "hearing difficulties have the potential to impair his ability to consult freely with his attorney," and that his "hearing difficulties are likely to be even more of an impairment when new concepts, terms, and strategies are being discussed than when familiar

-4-

material is being reviewed." Forensic Evaluation at 11. Dr. Morrow reported that "John would likely need at least one hearing aid in order to be able to consult clearly and freely with his attorney and follow all proceedings in open court." Forensic Evaluation at 11. Dr. Rapoport, then evaluated John at the request of his counsel. Dr. Rapoport "express[ed] [his] concern regarding Mr. John's poor hearing as it relates to his trial competency." Forensic Psychological Evaluation for Competency at 9. Dr. Rapoport found John's hearing difficulties interfered with his competency evaluation, and was concerned that "John's hearing difficulties may impair his ability to work with his attorney[,] to track witness testimony for contradictions and errors[,] and to understand things which might be said by the Court over the course of his trial." Forensic Psychological Evaluation for Competency at 9.

Dr. Irime has now recommended that John be fitted for a hearing aid for his left ear, in which he has "moderate severe to profound mixed hearing loss." Dr. Irime Letter at 7. Dr. Irime states that a second hearing aid will make it easier for John to pinpoint the direction of sound, improve his ability to hear in a noisy environment, and improve his understanding of important speech sounds like high frequency consonants. See Dr. Irime Letter at 3.

John's attorney also has stated that he is having trouble communicating with his client because of his hearing difficulties, making preparing for his defense difficult. Given the Court's audio technology, the Court is able to fit John with earphones in the courtroom, so that he can hear in the proceedings, but he cannot hear when people's voices are not mechanically amplified, such as when his counsel is consulting with him, which will be in a whisper in the courtroom or with an unamplified voice outside of the courtroom. The Court notes that: (i) John is ineligible to receive such services from the Department of Veteran's Affairs because of his incarceration; (ii) Indian Health Services does not fund hearing aids or devices; and (iii) that the community non-profit

Healthcare for the Homeless does not provide such services.  See Order at 2.  Because John's ability to hear impacts his competence, his ability to participate in his trial, and his ability to communicate with his counsel, the Court will order that the United States Marshals Service promptly provide a hearing aid for John's left ear, and evaluate his hearing aid for his right ear and its batteries to determine whether it is functioning properly.

**IT IS ORDERED** that the United States Marshals Service provide Defendant Johnson John with an appropriate hearing device for his left ear and evaluate the function of his current hearing aid so that John may effectively participate in the preparation of his defense for his pending trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzalez
   United States Attorney
Niki Tapia-Brito
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

John F. Moon Samore
John F. Moon Samore, P.C.
Albuquerque, New Mexico

  *Attorney for the Defendant*